In re the MARRIAGE OF Charlotte E. NEISWINGER, and Carl E. Neiswinger.

and

The Matter of Direct CONTEMPT OF Witness Robert MEYER, Petitioner.

No. 485S175.

Supreme Court of Indiana.

April 30, 1985.

J.J. Paul, III, Indianapolis, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

This case is before us on petition for transfer from the Court of Appeals. We grant transfer. The judgment and opinion of the Court of Appeals are vacated.

Petitioner Robert Meyer was called as a witness in a hearing concerning the dissolution of the Neiswingers' marriage. Several photographs were entered as exhibits and Meyer testified repeatedly that he had taken them. Apparently, however, he was not the photographer but had been present when the photographs were taken. A rebuttal witness testified that Meyer had lied and that *she* had taken the photographs. The trial court believed the petitioner had lied under oath. Meyer's reasons for the apparent lie are not relevant here, and his truthfulness is not in issue.

One week after the dissolution hearing, Charlotte Neiswinger petitioned the court to find Meyer in direct contempt of court for having testified falsely about the photographs. The court granted the petition and, *in Meyer's absence and without notice or hearing, summarily found him guilty of direct contempt.* The court sentenced Meyer to ninety days in jail.

Meyer's motion to reconsider was denied. However, the court granted, in part only, his motion to correct error, noting the court's failure to provide a statement describing Meyer's allegedly contemptuous acts. Ind.Code § 34-4-7-7 (Burns 1984 Supp.) (direct contempt). Meyer received a stay pending his appeal to the Court of Appeals whose opinion is published as *In Re the Marriage of Neiswinger*, (1984, First District) Ind.App., 467 N.E.2d 43 (vacated).

The Court of Appeals incorrectly decided that Meyer's alleged conduct constituted *direct* contempt but it correctly reversed the conviction on the basis that Meyer had been denied due process of law. The Court of Appeals stated that this denial of due process could be remedied by the procedure for *indirect* contempt citations. It ordered that an impartial, special judge be appointed for further proceedings.

Before proceeding with this opinion, we will provide the relevant Indiana statutes. Indiana's direct contempt and indirect contempt statutes provide in pertinent part as follows:

"34-4-7-1 Direct contempt; disturbing court

"Sec. 1. Every person who shall, by the commission of any felony, misdemeanor, or other unlawful act; or who by talking, moving about, or by signs, or gestures, or in any other manner, in any court of record, while the same is open for the transaction of business, and engaged therein, create any noise or confusion therein, *whereby the business and proceedings of said court shall be disturbed,* shall be deemed to be guilty of a direct contempt of said court."

Ind.Code § 34-4-7-1 (Burns 1973 Ed.) (emphasis added).

"34-4-7-2 Direct contempt; witnesses

"Sec. 2. Every person who, being sworn to testify as a witness in any court of record, in any trial or proceeding therein, shall refuse to testify touching the same; or who, being required by any court to be sworn in any such trial or proceeding, *shall refuse to take an oath or affirmation therein; or who, while upon the witness stand, shall purposely so demean himself, as to retard or disturb the proceedings thereof, shall be deemed guilty of a direct contempt thereof.*"

Ind.Code § 34-4-7-2 (Burns 1973 Ed.) (emphasis added).

"34-4-7-7 [3-907]. Trial for direct—Appeal.—When any person shall be arraigned for a direct contempt, in any court of record of this state, no affidavit, charge in writing, or complaint shall be required to be filed against him; but the court shall distinctly state the act, words, signs or gestures, or other conduct of the defendant which is alleged to constitute such contempt; and such statement shall be reduced to writing either by the judge making it, or by some reporter authorized by him to take it down when made; and the same shall be substantially set

forth in the order of the court on the same, together with any statement made in explanation, extenuation, or denial thereof, which the defendant may make in response thereto; and the court shall thereupon pronounce judgment, either acquitting and discharging the defendant, or inflicting such punishment upon him as may be consistent with the provisions of this chapter; and, if found guilty, the defendant shall have the right to except to the opinion and judgment of the court; and in all cases where the defendant may be adjudged to pay a fine of fifty dollars [$50] or more, to be imprisoned for such contempt, he shall have the right, either before or after the payment of such fine, or undergoing such imprisonment, to move the court to reconsider its opinion and judgment of the case, upon the facts before it, or upon the affidavits of any, or all persons who are actually present and heard, or saw the conduct alleged to have constituted such contempt; and, if the defendant shall fail to present the affidavit of every person present, in support of his motion, the court may direct the affidavits of all such persons as were so present (whose affidavits the defendant may have failed to procure) to be procured; and upon all such affidavits and the original statements of the court, and himself, touching such contempt, the defendant may move the court for a new trial, and recision of its judgment against him; and, if the court shall thereupon overrule such motion, the defendant may except and file a bill of exceptions, as in other criminal actions; and in all cases an appeal shall lie thereupon to the supreme court; or in case such judgments shall have been rendered in any special term of any superior court, an appeal shall lie in the first instance to the general term thereof, and thence, as in other cases, to the supreme court.

Ind.Code § 34-4-7-7 (Burns 1984 Supp.).

"34-4-7-4   Indirect contempt; resisting or delaying process; assaulting, influencing or intimidating witnesses

"Sec. 4.  *Every person who shall wilfully resist, hinder or delay the execution of any lawful process, or order of any court of record shall be guilty of an indirect contempt* of said court; and every person who shall offer, give or promise any reward, or who shall threaten to assault or injure, or shall assault or beat, or in any other manner whatever influence or intimidate or attempt to influence any witness to give, or abstain from giving testimony in any case, or to abstain from attending as such witness in any case, or who shall do any act to put such witness in fear, on account of any testimony which he or she may have given, or who, on account of any such testimony, shall injure, or threaten to injure such witness, shall be guilty of a direct or indirect contempt of the court in which such witness may be called to testify, according as the same may be done in the presence of such court, or elsewhere out of the presence thereof."

Ind.Code § 34-4-7-4 (Burns 1984 Ed.) (emphasis added).

"34-4-7-8   Indirect contempt; service of rule upon defendant; procedure

"Sec. 8.  *In all cases of indirect contempts* the person charged therewith shall be entitled, before answering thereto, or being punished therefor, *to have served upon him a rule of the court, against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt; and shall specify the time and place of such facts with such reasonable certainty, as to inform the defendant with the nature and circumstances of the charge against him; and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished for such contempt, which time the court shall, on proper showing, extend so as to give the defendant a reasonable and just opportunity to purge himself of such contempt.  No such rule as hereinbefore provided for, shall ever issue until the facts, alleged*

*therein to constitute such contempt, shall have been brought to the knowledge of the court by an information, duly verified by the oath of affirmation of some officers of the court, or other responsible person."*

Ind.Code § 34–4–7–8 (Burns 1984 Ed.) (emphasis added).

We agree with the Court of Appeals in this: Meyer was denied due process of law and his conviction for direct contempt should be and is hereby reversed. However, we make no suggestions or comments regarding any future proceedings. *See e.g. Brennan v. State,* (1961) 242 Ind. 79, 173 N.E.2d 312; *Grimm v. State,* (1959) 240 Ind. 125, 162 N.E.2d 454; *LaGrange v. State,* (1958) 238 Ind. 689, 153 N.E.2d 593.

■ We have granted transfer because the Court of Appeals' conclusion that Meyer's conduct constituted direct contempt was erroneous. We hold that giving false testimony in the manner done here, the falsity of which could not be known but only inferred by reference to later testimony and which, unlike, for example, a *refusal* to testify, apparently caused no disturbance or disruption or palpable offense to the proceedings does not warrant a summary conviction and, therefore, is not a direct contempt. *In Re Oliver,* (1948) 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; *Brennan v. State,* (1961) 242 Ind. 79, 173 N.E.2d 312; *Grimm v. State,* (1959) 240 Ind. 125, 162 N.E.2d 454; *LaGrange v. State,* (1958) 238 Ind. 689, 153 N.E.2d 593; *Boggs v. State,* (1979) 179 Ind.App. 607, 386 N.E.2d 992; *Garlin v. State,* (1975) 163 Ind.App. 570, 325 N.E.2d 515; *People v. Randall,* (1980) 89 Ill.App.3d 406, 44 Ill.Dec. 651, 411 N.E.2d 1017. Although the Court of Appeals correctly cited *Oliver* and *Brennan* in holding that Meyer was denied due process of law, it did not discuss these cases insofar as they refuted *Young v. State,* 198 Ind. 629, 154 N.E. 478.

In *Oliver,* the petitioner was convicted of contempt after testifying in camera before a "one-man grand jury." His testimony was inconsistent with that of an earlier witness, and the judge/juror summarily convicted him on the basis of that inconsistency. The Supreme Court reversed the conviction. Two justices dissented not on the merits.

The Supreme Court discussed the distinction between direct and indirect contempt, and the action available to a trial court in each case. It concluded that Oliver had been denied due process when the trial court convicted him summarily for lying in the proceedings. The Court wrote:

"It is true that courts have long exercised a power summarily to punish certain conduct committed in open court without notice, testimony or hearing. *Ex parte Terry,* 128 U.S. 289, 32 L.Ed. 405, 9 S.Ct. 77, was such a case. There Terry committed assault on the marshal who was at the moment removing a heckler from the courtroom. The 'violence and misconduct' of both the heckler and the marshal's assailant occurred within the 'personal view' of the judge, 'under his own eye,' and *actually interrupted the trial of a cause then under way.* This Court held that under such circumstances a judge has power to punish an offender at once without notice and without hearing, although his conduct may also be punishable as a criminal offense. *This Court reached its conclusion because it believed that a court's business could not be conducted unless it could suppress disturbances within the courtroom by immediate punishment.* However, this Court recognized that such departure from the accepted standards of due process was capable of grave abuses, and for that reason gave no encouragement to its expansion beyond the suppression and punishment of the court-disrupting misconduct which alone justified its exercise. Indeed in ... *Terry* ... the Court cited with approval its decision in *Anderson v. Dunn,* 6 Wheat (U.S.) 204, 5 L.Ed. 242, which had marked the limits of contempt authority in general as being 'the least possible power adequate to the end proposed.' *Id.* 6 Wheat (U.S.) at 231, 5 L.Ed. 248, And see *Re Michael,* 326 U.S. 224, 227, 90 L.Ed. 30, 32, 66 S.Ct. 78.

"That the holding in ... *Terry* ... is not to be considered as an unlimited abandonment of the basic due process procedural safeguards, even in contempt cases, was spelled out with emphatic language in *Cooke v. United States,* 267 U.S. 517, 69 L.Ed. 767, 45 S.Ct. 390, a contempt case arising in a federal district court. There is was pointed out that for a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but that the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct. *This Court said that knowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense.* Furthermore, the Court explained the *Terry* rule as reaching *only such conduct as created 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished, demoralization of the court's authority will follow.' Id.* 267 U.S. at 536, 69 L.Ed. 773, 45 S.Ct. 390.

"Except for a narrowly limited category of contempts, due process of law as explained in ... *Cooke* ... requires that one charged with contempt of court *be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.* The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, *which disturbs the court's business,* where all of the essential elements of the misconduct are under the eye of the court, are actu-ally observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public. *If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to ... Cooke ... that the accused be accorded notice and a fair hearing as above set out.*"

*In Re Oliver,* (1948) 333 U.S. at 274–276, 68 S.Ct. at 508–509, 92 L.Ed. at 694–95 (emphasis added).

In light of this passage, and especially the last sentence thereof, we disagree with the Court of Appeals' citation of *Oliver* for the proposition that, the fact that "the court chose to believe [the rebuttal witness] over Meyer is a valid basis for bringing a direct contempt charge." *In Re Marriage Of Neiswinger,* 467 N.E.2d at 45. *Oliver* does not stand for this proposition, nor does our case of *Brennan v. State,* (1961) 242 Ind. 79, 173 N.E.2d 312, mean that "the fact that the falsity of Meyer's testimony was not apparent until [the rebuttal witness] took the witness stand is of no consequence...." *In Re Marriage Of Neiswinger,* 467 N.E.2d at 45. In *Brennan,* an attorney was convicted of direct contempt for having told his witness, outside the hearing of the court, to lie about his fee. This Court embraced the statement from *Oliver* that direct contempt is conduct the contemptuous nature of which is personally known and observed by the court and not made known by the testimony of others. *Brennan v. State,* 173 N.E.2d at 313. This Court wrote: "There is no showing in this case that immediate punishment was necessary to maintain order in the court and a respect for its authority. Such an element being totally absent, there is a failure of proof of direct contempt." *Id.*

The Court of Appeals in this case stated, "Lying on the witness stand is no less an impediment to court proceedings than refusing to testify; the administration of justice is equally hindered." *In Re Marriage*

*Of Neiswinger,* (1984) 467 N.E.2d at 45. We believe *Oliver* and *Brennan* instruct otherwise. Refusal to testify, for example, may indeed disturb proceedings in a way that conduct such as Meyer's obviously did not. "The right to be heard in open court before one is condemned is too valuable to be whittled away under the guise of 'demoralization of the court's authority.'" *In Re Oliver,* (1948) 92 L.Ed. at 697. Other courts have stated that the extra court time spent ferreting out the truth after a witness has lied is not sufficiently disruptive to warrant summary action. *Hicks v. Stigler,* (1982) Iowa App., 323 N.W.2d 262, *citing State v. Meese,* (1930) 200 Wis. 454, 229 N.W. 31.

■ In this case summary punishment was not necessary to maintain order in the court and a respect for its authority. As the Court of Appeals wrote:

> "In the present case, the deceptive testimony of Meyer did not come to light while he was on the witness stand, thus, the charge of contempt was not necessary to maintain decorum in the court. Since the contempt was not discovered and filed in Meyer's presence, due process requires ... that he be afforded an opportunity to answer ... and defend...."

*In Re Marriage Of Neiswinger,* (1984) 467 N.E.2d at 45–46. Because the Court of Appeals believed that Meyer's alleged contempt was direct in nature but that he was entitled to process beyond that provided statutorily for direct contempt, it fashioned a procedure whereby the indirect contempt statute would apply to a direct contempt. We believe that if Meyer had committed direct contempt, summary action in compliance with Ind.Code § 34-4-7-7 (Burns 1984 Supp.) would have been appropriate. His alleged contempt did not pose a sufficient threat to the order of the court to warrant summary action; therefore he did not commit direct contempt, and therefore he was denied due process of law when he was convicted without notice or an opportunity to be heard, or the procedural rights guaranteed one charged with indirect contempt.

For all the foregoing reasons, transfer is granted, the judgment and opinion of the Court of Appeals is vacated, and Meyer's conviction for direct contempt is reversed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.