**Peter P. MACON, Petitioner-Appellant,**

v.

**Russell E. LASH, Warden, Respondent-Appellee.**

**No. 18611.**

United States Court of Appeals, Seventh Circuit.

April 6, 1972.

———◆———

Michael J. Smith, Chicago, Ill., for petitioner-appellant.

Theodore L. Sendak, Atty. Gen., Mark Peden, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.[1]

STEVENS, Circuit Judge.

In his application for a writ of habeas corpus petitioner alleged that his right to appeal from his murder conviction was lost because of the "incompetence and fatal negligence" of his court-appointed counsel. The question for us is whether his federal claim had been "fairly presented" to the Indiana courts before it was denied by the district court.

1. This case was argued orally before a panel consisting of Senior Circuit Judges Major and Hastings and Circuit Judge Kerner. Neither Senior Circuit Judge Major, whose death occurred on January 4, 1972, nor Circuit Judge Kerner participated in the preparation of this opinion. Thereafter a panel composed of Senior Circuit Judge Hastings and Circuit Judges Stevens and Sprecher was designated to determine this appeal. This opinion has been prepared after a careful study of the briefs and record, but without having the matter argued orally a second time before the reconstituted panel.

To answer this question we must (1) state the claim in detail; (2) review petitioner's numerous, futile attempts to obtain a hearing from an Indiana court; and (3) test these attempts against the exhaustion requirement as defined in Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438.

## I.

On December 9, 1961, after a jury trial, petitioner was convicted of second degree murder and was later sentenced to life imprisonment for that offense. As a matter of Indiana law, he could not appeal unless a motion for a new trial was filed within 30 days of his conviction[2]; that time limitation was jurisdictional and could not be extended.[3]

On January 5, 1962, petitioner's court-appointed counsel filed a "Motion for Transcript to be Prepared at County Expense and for Extension of Time in Which to File Motion for New Trial." This motion was denied on May 1, 1962, and a few days later petitioner's counsel withdrew.

On January 8, 1962, as a matter of Indiana law, petitioner's right to appeal expired. His allegations indicate that a timely appeal would have had arguable merit. He does not assert that any constitutional error was committed during the trial itself, or that any procedural defect is evident from matter *dehors* the record. He simply alleges that the evidence was insufficient to establish his guilt beyond a reasonable doubt,[4] and that the court erred in denying him a continuance needed to obtain the testimony of an absent witness and in permitting the prosecutor to testify These allegations provide proper grounds for a motion for a new trial and for a direct review of the merits of his conviction; they are plainly insufficient as a basis for a collateral attack as a matter of either Indiana or federal law.

Petitioner's attack on the "competency" of his counsel is not directed at the adequacy of his representation during the trial itself. It focuses on the lawyer's failure to protect his right to appeal by either (a) filing a timely motion for a new trial, or (b) advising petitioner of the need for such a timely motion to enable petitioner to take the necessary steps himself. It is evident, if the allegations are accepted as true, that an otherwise thoroughly competent lawyer overlooked a critical procedural point, possibly because it was his first criminal case and his office was over 50 miles away from a law library adequate for an appellate practitioner.[5] Be that as it may, petitioner alleges that neither his lawyer nor the trial judge advised him of the crucial importance of filing a motion for a new trial in 30 days. For that reason, and that reason alone, an indigent defendant allegedly lost his right to appeal his conviction for murder.

Except for the inferences which the Indiana Supreme Court has drawn from the fact that trial counsel did not file a timely motion for a new trial, there is nothing in the record to indicate that either petitioner or any court has been advised, either orally or in writing, that an appeal would have been frivolous; that counsel evaluated the issues which might be raised on appeal;[6] or that petitioner intended to waive his right to appeal.

In support of his claim predicated on the Fourteenth Amendment to the Federal Constitution, petitioner contends that he was denied (1) due process of

---

2. Webster v. State, 209 Ind. 274, 198 N.E. 781 (1935); Burns' Ind.Stat.Ann. § 9–1903, IC 1971, 35–1–42–3.

3. Groover v. State, 239 Ind. 271, 156 N.E. 2d 307 (1959); Murley v. State, 240 Ind. 655, 168 N.E.2d 205 (Ind.1960).

4. He contends that the evidence showed that he did not cause the victim's death and that he acted in self-defense.

5. These facts are set forth in an affidavit filed by the lawyer in the Circuit Court of Orange County in June of 1966.

6. *Cf.* Nickols v. Gagnon, 454 F.2d 467 (7th Cir. 1971).

law, in not having the effective assistance of counsel as guaranteed by the Sixth Amendment; and (2) the equal protection of the laws. He has not specifically relied on the trial court's failure to advise him of his right to appeal or of the need for prompt action to preserve that right.

## II.

The allegations contained in the application for a federal writ of habeas corpus had been included in a petition for permission to file a belated motion for a new trial which Macon had filed in the Circuit Court of Orange County on June 19, 1968. That petition was denied without a hearing. Petitioner did not take an appeal to the Indiana Supreme Court from that denial. It is that omission on which the Attorney General primarily relies in urging a failure to exhaust state remedies. We must evaluate that omission in the context of petitioner's other attempts to obtain relief from an Indiana court.

In the eight-year period between his conviction and the filing of this petition in the district court, petitioner filed five petitions in the Circuit Court of Orange County and seven applications in the Indiana Supreme Court. Since it is undisputed that his claims were adequately presented to the Circuit Court, we confine our review to the question whether the Indiana Supreme Court had a fair opportunity to allow petitioner to take an appeal from his conviction for the reasons set forth in support of his federal petition.

The Indiana Supreme Court has filed four written opinions explaining its reasons for rejecting petitioner's claim.[7] In addition, it has denied petitions for rehearing and for an extraordinary writ without opinion.

On October 23, 1962, the Indiana Supreme Court held that the trial court had correctly denied the motion for an extension of time to file a motion for a new trial and the motion for a transcript. The ruling was made in response to a pleading prepared *pro se* entitled "Motion for Appointment of Counsel." The court held that a transcript was not needed for the preparation of a motion for a new trial, and assumed that counsel's failure to file such a motion warranted the conclusion that no meritorious grounds for such a motion existed. The court did not comment on counsel's request for an extension of time to file such a motion. It refused to assume "without a showing [,] that a motion for a new trial should have been filed or that counsel was incompetent because such a motion was not filed." 185 N.E.2d at 621.

From that decision petitioner applied for a writ of certiorari. The United States Supreme Court in Macon v. Indiana, 375 U.S. 258, 84 S.Ct. 362, 11 L.Ed.2d 311, granted the writ, vacated the judgment of the Indiana Supreme Court, and remanded for further consideration in light of Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892. In *Lane* the Court affirmed our holding that the Indiana *coram nobis* procedure was defective because an indigent's right to appeal could be entirely cut off at the unreviewable discretion of the public defender. See 302 F.2d 537, 539; 372 U.S. 477, 481, 83 S.Ct. 768, 9 L.Ed.Ed.2d 892. The majority opinion rested on equal protection grounds, but Justices Harlan and Clark concurred on the ground that the requirements of due process were not met.

On January 17, 1964, the Indiana Supreme Court analyzed petitioner's claim in the light of Lane v. Brown. The court held as a matter of Indiana law that a

---

7. State ex rel. Macon v. Orange Circuit Court, 243 Ind. 429, 185 N.E.2d 619 (1962), vacated and remanded, 375 U.S. 258, 84 S.Ct. 362, 11 L.Ed.2d 311, State ex rel. Macon v. Orange Circuit Court, 245 Ind. 269, 195 N.E.2d 352 (1964), rehearing denied with opinion, State v. Orange Circuit Court, 245 Ind. 269, 198 N.E.2d 229 (1964), cert. denied, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274, Macon v. State, 221 N.E.2d 428 (1966), cert. denied, 386 U.S. 1038, 87 S.Ct. 1493, 18 L.Ed.2d 603.

defendant's failure to file a motion for a new trial conclusively established that he has no grounds for an appeal.[8] It then held that since that rule "is applicable alike to the rich man and the pauper in this state," there was no denial of equal protection.[9]

Having held that petitioner had no basis for direct review of his conviction, the court noted that it had adopted new rules which allowed a belated motion for a new trial based on matter *dehors* the record which had not come to the attention of counsel during the trial. It directed the trial court to appoint counsel to prepare such a motion, pointing out that there could be no necessity for ordering a transcript at public expense in view of the limited office of the belated motion.

On May 17, 1964, the Indiana Supreme Court denied rehearing and filed another opinion, explaining that counsel other than the public defender should be appointed. That opinion reflects a consideration of the fairness of the Indiana procedure as compared with federal practice and reiterated the court's holding that the failure to file a motion for a new trial established the absence of merit in any possible appeal.[10]

On November 29, 1966, the Indiana Supreme Court filed its fourth opinion, this time denying a petition for a writ of certiorari. The opinion indicates that at least two pleadings which had been filed in the Circuit Court were before the Supreme Court: (1) a belated motion for a new trial filed on November 19, 1965, and (2) a petition for appointment of co-counsel which was apparently filed on June 24, 1966.

The former set forth petitioner's grounds for a new trial, again reiterated the denial of an extension of time to file a motion for a new trial, and complained that the Supreme Court's refusal "to provide Appellate counsel for the defendant herein in subsequent proceedings was unconstitutional and in derogation of defendant's right to due process and equal protection of the law."

The latter was an affidavit prepared by court-appointed counsel, who had also represented petitioner at the trial. He stated that he had no appellate experience; that the matter involved due process issues; that he did not have access to "an adequate legal library with which to prepare and perfect such an appeal"; that appellate practice in the State of Indiana involves specialization; and that "in order to properly protect the defendant's interest herein, the said defendant should be represented by co-counsel with appellate practice and experience."

Both applications were denied by the trial court and by the Supreme Court.

8. "It is our duty to determine and define the law of the State of Indiana, and we hold that where a defendant in a criminal case has failed to file a motion for a new trial, he has no grounds for an appeal to this court." 195 N.E.2d at 353.

9. A reading of the opinion can leave no doubt that the Indiana Supreme Court considered, and firmly rejected, petitioner's equal protection contention. With respect to the due process problem, the second opinion went a step beyond the first which relied in part on the absence of any showing of meritorious grounds for an appeal; the second opinion plainly holds that lack of merit is established by the failure to file a motion for a new trial within the 30-day time period.

10. "The original trial counsel was best able to judge during the 30 day period if merit existed for filing a motion for a new trial from his notes, memoranda and knowledge during trial. . . .

"A pauper and a rich man alike are bound in this state by the action or nonaction of competent trial counsel. . . .

\* \* \* \* \*

"Even though no showing is made in the case of any merit, and even though the Public Defender has found no merit exists, and even though we thus far have been shown .that no merit exists, and even though the petitioner or his trial counsel herein have not pointed out any specific meritorious error for consideration here, we have, nevertheless, directed the trial court to appoint counsel, at taxpayers' expense, to prepare an application for a belated motion for a new trial, if such counsel can find any ground for filing such an application in good faith." 198 N.E.2d at 230.

The opinion of the Indiana Supreme Court contains no reference to the grounds which petitioner urged as a basis for a new trial or to his counsel's alleged lack of appellate experience. The court firmly restated its prior holdings that direct review was foreclosed by the failure to file a timely motion for a new trial,[11] and that his allegations were not sufficient for a belated motion for a new trial.[12]

On June 19, 1968, petitioner filed in the Circuit Court of Orange County his second petition for permission to file a belated motion for a new trial. This petition squarely attacked the competency of his trial counsel. It is the failure to appeal from the denial of this petition that is the principal basis for the Attorney General's exhaustion argument. It appears, however, that a copy of the June 19, 1968, petition was attached as an exhibit to a "Petition for Writ of Mandate" which was filed in the Supreme Court of Indiana on January 30, 1969. That petition asked the Supreme Court to assign the June 19, 1968, petition to a special judge for a decision, since the matter had been pending for over six months. On July 7, 1969, the Supreme Court denied that petition, and on August 20, 1969, it denied a motion to reconsider.

This habeas corpus litigation was thereafter commenced. In the court below, the Attorney General argued that the denial of counsel issue "has been resolved several times by both the Indiana Supreme Court and this Court."[13] In this court the Attorney General asserts:

"Petitioner has not presented the issue of his counsel's post-trial incompetence to the Indiana Supreme Court, as he failed to appeal from the denial of his petition for permission to file belated motion for new trial. He is precluded by 28 U.S.C. § 2254 from bringing this action in federal habeas corpus."[14]

The Attorney General does not suggest that the Indiana courts would afford petitioner any relief. Indeed, he implies the contrary when he states that petitioner "may return to the District Court after he has exhausted his state court remedies."[15] The question here is whether he had done so on April 24, 1970, when the federal district court dismissed his petition.

### III.

We have recited the history of the Indiana post-conviction litigation in some detail because the Supreme Court's express approval of our decision in United States ex rel. Kemp v. Pate, 359 F.2d

11. "The appellant had counsel in the trial court. If such counsel found that there is meritorious grounds for a new trial, we have the right to assume that under his duties as such counsel, he would have filed such a motion." 221 N.E.2d at 429.

12. "The present petition before us sets forth no specific grounds or alleged errors which would support the petition for a writ of certiorari to review the overruling of his belated motion for a new trial. As we have previously stated, it is the duty of counsel to keep trial notes and from such notes to prepare the proper motion for a new trial or petition for a writ of certiorari within the time prescribed. We are asking no greater duty on the part of counsel, nor more speed than is required in Federal court cases.

"The fact remains that there are cases in which there are no grounds for appeal, and it is impossible for an appellant to find any meritorious grounds, either himself or through his appointed counsel. . . . We feel the appellant here has had his day in court—in fact, more than one day—and the petitions of the appellant are denied." 221 N.E.2d 429-430.

13. "In the present proceedings, petitioner alleges denial of assistance of counsel and denial of equal protection of the laws. The first issue has been resolved several times by both the Indiana Supreme Court and this Court in it's Order of April 16, 1968, *supra*.

"The second issue, denial of the equal protection of the laws, is greedy at best." P. 2 of the Attorney General's Memorandum in Support of Respondent's Motion to Dismiss.

14. Brief of respondent-appellee at pp. 4-5.

15. Brief of respondent-appellee at p. 7.

749 (1966) in its opinion reversing the First Circuit in Connor v. Picard, 434 F.2d 673, 674 (1970); Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438, highlights the need for careful analysis.

In simple terms, as the Supreme Court has phrased it, the question is whether the federal claim has been fairly presented to the state courts.[16] All of the facts upon which petitioner relies were before the Indiana Supreme Court, but that is not a sufficient answer to the exhaustion question. The claimant's legal theory, as well as his factual allegations, are relevant to the question whether that court had a fair opportunity to consider petitioner's claim.[17]

In *Picard*, the Supreme Court, apparently adopting the First Circuit's view that the equal protection ground for its decision presented a different legal question than the Fifth Amendment issue decided by the Massachusetts Supreme Court,[18] held that the difference in legal theory precluded exhaustion.[19] The Court expressly recognized, however, that there may be "variations in the legal theory or factual allegations urged in its support" which do not change the basic claim presented to the state court.[20] Our question then is whether petitioner's emphasis on the incompetence of counsel in the federal courts is a mere variation of the legal theory presented to the Indiana Supreme Court or should be regarded as a different claim. In view of the holding in *Picard*, the question is not free of doubt, but in our judgment we are dealing with a variation of the same claim rather than a different legal ground.

This judgment is not predicated on the adequacy of the opportunity presented to the state court measured by the number of petitioner's filings. The multiplicity of post-conviction filings may actually tend to obscure a meritorious claim which may lurk in the record and make it more difficult, rather than easier, to focus on the issue. Moreover, any rule which rewarded the repetition of such filings would only tend to impede the orderly administration of our business.

Nor do we rely on the fact that the June 19, 1968, motion was attached as an exhibit to the petition for mandate asking the Indiana Supreme Court to appoint a special judge to rule on the belated motion which had been pending for some months in the Circuit Court; the Supreme Court cannot fairly be expected to have considered the contents of that exhibit for any purpose other than in

16. "It follows, of course, that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. *See, e. g.*, Wilwording v. Swenson, *supra* [404 U.S. 250, 92 S.Ct. 407, 30 L.Ed.2d 418]; Roberts v. LaVallee, 389 U.S. 40, 42–43, [88 S.Ct. 194, 196–197, 19 L.Ed.2d 41] (1967); Brown v. Allen, 344 U.S. 443, 447–450, [73 S.Ct. 397, 402–404, 97 L. Ed. 469] (1953)." 404 U.S. at 275, 92 S.Ct. at 512.

17. "The question here is simply whether, on the record and argument before it, the Massachusetts Supreme Judicial Court had a fair opportunity to consider the equal protection claim and to correct that asserted constitutional defect in respondent's conviction." *Id.* at 276, 92 S.Ct. at 513.

18. Logically, however, the Massachusetts court's analysis of the indictment issue would compel a like answer to the equal protection argument.

19. "To be sure, respondent presented all the facts. Yet the constitutional claim the Court of Appeals found inherent in those facts was never brought to the attention of the state courts. The Supreme Judicial Court dealt with the arguments respondent offered; we cannot fault that court for failing also to consider *sua sponte* whether the indictment procedure denied respondent equal protection of the laws." 404 U.S. at 277, 92 S.Ct. at 513.

20. "Obviously there are instances in which 'the ultimate question for disposition,' United States ex rel. Kemp v. Pate, 359 F.2d 749, 751 (CA7 1966), will be the same despite variations in the legal theory or factual allegations urged in its support." *Ibid.*

connection with the relief requested in the motion to which it was attached.

In our judgment petitioner did adequately present both the relevant facts and his basic theory to the Indiana Supreme Court. In essence, he contends that he should not be deprived of his right to appeal because his court-appointed counsel filed a futile motion for an extension of time instead of filing a timely motion for a new trial. The conclusory allegation that counsel was incompetent rests entirely on this critical error. The record adequately discloses that appropriate grounds for a motion for a new trial were available and that counsel's mistake resulted from his lack of appellate experience. The Indiana Supreme Court clearly expressed the opinion that these facts did not demonstrate incompetence because it repeatedly emphasized the inference which should be drawn from the fact that "competent counsel" had not filed a timely motion. We have no doubt that petitioner's case would not have been advanced in that court by expressly accusing his lawyer of incompetence. A petitioner acting *pro se* need not cite " 'book and verse on the federal constitution' "[21] or identify his theory with a hornbook heading. Wheth-

er or not petitioner's claim is framed in terms of "incompetence of counsel," his basic theory was that his lawyer's mistake resulted in deprivation of due process and a denial of equal protection. We think the theory of his claim was fairly presented to the Indiana Supreme Court, and it plainly expressed its judgment that the claim was without merit.[22]

■ We therefore hold that the substance of petitioner's federal habeas corpus claim was presented to the state courts in compliance with our understanding of *Picard*.[23]

IV.

■■ With due respect for the views of the Indiana Supreme Court, we are persuaded that petitioner's federal claim has merit. The Federal Constitution contains no requirement that a defendant be given appellate review of his conviction,[24] but if such review is provided, appellate procedures and their availability to the indigent must satisfy the Fourteenth Amendment's basic standards of fairness. Since the Supreme Court has held that those standards require the states to waive even nominal filing fees,[25] to provide free transcripts,[26] to appoint

21. *Id.* at 278, 92 S.Ct. at 513, quoting from Daugherty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958).

22. The court specifically discussed competency of counsel. It begged the question, however, by first concluding that counsel was competent and then relying on its presumption that competent counsel would have filed the new trial motion if there were any grounds therefor. The fact that counsel requested additional time to file a new trial motion adequately rebutted any presumption that he thought there could be no meritorious grounds raised. Since Indiana law prohibits extensions of time, the very fact that he requested such an extension raised the competency issue. Petitioner's theory was before the court. He cannot be denied federal habeas corpus consideration of his claim merely because the state court chose to rely on a questionable presumption rather than specifically discussing the facts of the case.

23. "We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts." 404 U.S. at 278, 92 S.Ct. at 513. Or, as the Supreme Court recently stated the test: "[W]hether any of petitioner's claims is so clearly distinct from the claims he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim; . . . ." Humphrey v. Cady, 405 U.S. 504, 92 S. Ct. 1048, 31 L.Ed.2d 394 (1972). We think the petitioner has met the test as so stated.

24. McKane v. Durston, 153 U.S. 684, 687–688, 14 S.Ct. 913, 38 L.Ed. 867.

25. Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209.

26. Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585, 100 L.Ed. 891; Eskridge v. Washington Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269.

counsel,[27] and to refuse to dismiss meritless appeals that have not been adequately evaluated by appellate counsel,[28] we believe it is equally clear that petitioner's right to appeal could not be forfeited by the critical error of inexperienced court-appointed counsel disclosed by this record.

■ To paraphrase Mr. Justice Harlan's concurrence in Lane v. Brown, 372 U.S. at 485, 83 S.Ct. 768, 9 L.Ed. 2d 892, we think it falls short of the requirements of due proces for Indiana to foreclose indigents from appealing in a case such as this because of a critical mistake of court-appointed counsel by whom the indigent was represented at his trial. See Ferguson v. Georgia, 365 U.S. 570, 572, 596, 81 S.Ct. 756, 5 L.Ed. 2d 783;[29] Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799;[30] Nelson v. Payton, 415 F.2d 1154 (4th Cir. 1969), cert. denied, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420; Wainwright v. Simpson, 360 F.2d 307 (5th Cir. 1956). Cf. United States ex rel. Singleton v. Woods, 440 F.2d 835 (7th Cir. 1971); United States ex rel. Witt v. LaVallee, 424 F.2d 421 (2d Cir. 1970); United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir. 1969), cert. denied, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105. Absent evidence of an intelligent waiver or an appraisal by counsel comparable to that required by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, we believe the state was constitutionally required to protect petitioner's right to appeal, particularly since his motion for an extension of time was filed before the time to appeal had expired, and therefore evidenced a desire to appeal.

■ A brief comment on the remedy is appropriate. If petitioner had not exhausted his state remedies at the time his application for a federal writ was filed, he would now be required to invoke the new Indiana post-conviction procedures afforded by rules PC-1 and 2 adopted by the Indiana Supreme Court, effective August 1, 1969. Since we hold that he has met the exhaustion requirement, a normal procedure would be a remand to the district court for an evidentiary hearing on the allegations in his petition. In this case, however, there appears to be no need for such a hearing.

The facts which demonstrate that petitioner is entitled to a direct appeal from his conviction were not disputed by the Attorney General; indeed, he has provided us with a most helpful chronology of the relevant filings in his brief. Moreover, the relief which petitioner should obtain is perfectly clear. The transcript of his trial should be written up, counsel should be appointed to represent him, and he should be permitted to prosecute an appeal to the Indiana Supreme Court. In order to avoid further unnecessary expenditure of judicial energy and public funds, these steps should be taken promptly. Ironically, the desire to minimize expenses by saving the cost of preparing trial transcripts has no doubt resulted in post-conviction litigation expenses far greater

27. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811.

28. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493; see Nickols v. Gagnon, 454 F.2d 467 (7th Cir.)

29. An examination of *Ferguson* indicates that petitioner's claim might more appropriately be that he was denied effective assistance of counsel, rather than that he had incompetent counsel.

30. The right to trial counsel expressed in *Gideon* or to appellate counsel as expressed in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, is, of course, of such fundamental importance that it is given retroactive effect. See Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972) (opinion of Mr. Justice Brennan). The Fourth Circuit, however, has refused to give its decision in Nelson v. Payton, 415 F.2d 1154 (1969), cert. denied, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420, retroactive application. Shiflett v. Commonwealth of Virginia, 447 F.2d 50 (en banc, 1971).

than the cost of the appeal itself. In any event, the requirements of even-handed procedures are paramount, and the course which must now be pursued is clear.

The appropriate relief is indicated by the Supreme Court's disposition of Lane v. Brown, 372 U.S. at 485, 83 S.Ct. 768, 9 L.Ed.2d 892. The judgment of the district court is vacated and the case is remanded to that court for the entry of an appropriate order discharging petitioner from custody unless within a reasonable time to be fixed by the district court the State of Indiana provides him an appeal on the merits to the Supreme Court of Indiana from his conviction.

It is so ordered.

HASTINGS, Senior Circuit Judge (concurring).

I concur in the result reached by the majority in this case solely on the ground that petitioner Macon was deprived of his right to due process under the Fourteenth Amendment of the Federal Constitution as a result of the continued denial of his fundamental right to a direct appeal of his conviction to the Supreme Court of Indiana. To cut through the long and tortuous maze of judicial proceedings now comprising the history of this case, it is clear to me, at least, that petitioner has been denied his right to appeal in the face of the failure of his otherwise competent court-appointed counsel to timely file a motion for a new trial following his conviction because of his lawyer's self-admitted lack of appellate experience in criminal matters. It further appears from counsel's affidavit that he intended to present legally sufficient questions in his intended belated appeal. I express no view as to how the Supreme Court of Indiana would rule in deciding such an appeal. I would only entertain the pious hope that it will consider the appeal and finally pass upon it.